IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK04-42316 |
| | ) | |
| KENT OELKERS, | ) | CH. 11 |
| | ) | |
| Debtor. | ) | |
| INTERSTATE STRUCTURES, INC., | ) | ADV. NO. A06-04054 |
| KENT OELKERS, and CRAIG THURSTON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HERITAGE BANK and NEBRASKA | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM**

Hearing was held in Lincoln, Nebraska, on April 4, 2007, on Defendant Heritage Bank's Motion to Dismiss (Fil. #20), and a Resistance thereto filed by Plaintiffs (Fil. #24). Marion Pruss appeared for Plaintiffs, and Kent E. Rauert appeared for Defendant Heritage Bank. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(F).

The issues involved in this proceeding are intertwined with the bankruptcy proceeding in *Thurston, et al. v. Heritage Bank, et al.*, Case No. A06-04055, and, therefore, were heard together. A similar Memorandum and a separate Judgment will also be entered in Case No. 06-04055.

### *Findings of Fact*

The operative facts are not in dispute.

1. Plaintiff Interstate Structures, Inc. ("ISI") is a Nebraska corporation and is not a debtor in any bankruptcy proceeding.

2. Plaintiff Kent Oelkers ("Oelkers") is the President and shareholder of ISI, and is a debtor in a Chapter 11 proceeding in the District of Nebraska, docketed at Case No. BK04-42316.

3. Plaintiff Craig Thurston ("Thurston") is a Vice President and shareholder of ISI, and is a debtor in a Chapter 11 proceeding in the District of Nebraska, docketed at Case No. BK04-42317.

4. At all times pertinent hereto, Heritage Bank had a valid, perfected lien in all assets of ISI.

5. ISI ceased doing business in June 2004, and all of its assets have been liquidated and the proceeds paid to Heritage Bank.

6. Plaintiffs Oelkers and Thurston also owned a company called KC Development Co. ("KC"). According to Plaintiffs' complaint, Heritage Bank also received "liens and assignments" with respect to KC, although the extent of such liens and assignments is not clear from the record.

7. During the week of April 5, 2004, funds in the amount of $100,000.00 belonging to KC were placed into the ISI operating account at Heritage Bank. Plaintiffs Oelkers and Thurston assert that they caused KC to pay that money to the ISI account to enable ISI to pay certain tax obligations upon which Oelkers and Thurston may have personal liability.

8. Of the $100,000.00 of KC funds placed into the ISI account at Heritage Bank, approximately $25,000.00 was used to pay a bond premium for ISI, and the balance of approximately $75,000.00 was "taken" by Heritage Bank and applied to ISI's obligations to it.[1]

9. KC is not a party to any bankruptcy proceeding, and is not a party to this proceeding.

## *Discussion*

Plaintiffs assert that the $75,000.00 payment to Heritage Bank was, indirectly, really the money of Oelkers and Thurston, parties to separate Chapter 11 bankruptcy proceedings in this district. Plaintiffs further assert that the transfer caused Heritage Bank to receive more than it would have received in a Chapter 7 liquidation of Oelkers and Thurston at a time when Debtor was insolvent and otherwise satisfied the elements of a voidable preference under 11 U.S.C. § 547.

Heritage Bank has not yet filed an answer in this proceeding, but instead has filed its motion to dismiss for failure to state a claim upon which relief can be granted. Specifically, Heritage Bank asserts that in order for the transfer of the $75,000.00 to Heritage Bank to be a preference, it must be a "transfer of an interest of *the debtor* in property . . . ." 11 U.S.C. § 547(b) (emphasis added). Heritage Bank further points out that 11 U.S.C. § 101(13) defines "debtor" as "a person or municipality concerning which a case under this title has commenced." No case has been

---

[1]The pleadings are inexact as to the dollar amounts, and for purposes of this Memorandum, this Court will assume that the actual amount involved in the transfer from the ISI account to Heritage Bank was $75,000.00.

commenced by or against ISI, nor has any case been commenced by or against KC. Thus, Heritage Bank asserts that Plaintiffs have failed to meet the threshold element of a preference under 11 U.S.C. § 547(b).

In response, Plaintiffs assert that the money paid to Heritage Bank may have technically belonged to either ISI or KC, but equitably belonged to Plaintiffs Oelkers and Thurston. Specifically, Oelkers and Thurston were the joint owners of KC, and Plaintiffs assert (although Plaintiffs provided no evidence) that KC had no debt and if the money had not been paid over to ISI's account, it would have been distributed to Plaintiffs Oelkers and Thurston from KC. In other words, Plaintiffs are asking this Court to overlook the corporate form and somehow equate Plaintiffs Oelkers and Thurston with both KC and ISI. Under Nebraska law, in order to ignore the corporate form under an "alter ego" theory requires a showing of diversion by the shareholder or shareholders of corporate funds or assets to their own or improper uses and the fact that the corporation is a mere facade for the personal dealings of the shareholder and that the operations of the corporation are carried on by the shareholder in disregard of the corporate entity. *Medlock v. Medlock*, 642 N.W.2d 113, 124 (Neb. 2002). As indicated, there was no evidence whatsoever presented which would allow this Court to overlook the separate corporate structures of KC and ISI as separate and distinct legal entities from Plaintiffs Oelkers and Thurston. Absent such evidence, this Court declines to do so.

The Eighth Circuit case of *Stover v. Fulkerson (In re Bruening)*, 113 F.3d 838 (8th Cir. 1997), is instructive in this matter. That case involved a payment of $13,700.00 to a creditor by a corporate entity owned by the debtor Among other things, the debtor attempted to set aside the payment as a preference under 11 U.S.C. § 547(b). In refusing to find that the payment was a transfer "of an interest of the debtor," the Eighth Circuit stated:

> It is undeniable that the $13,700 that [the creditor] received belonged, if only for the short interlude between Mr. Bruening's [the debtor's] transfer and BHC's payment, to BHC. The trustee, of course, has no right to recover a payment by a co-obligor of a debtor on a note, or a payment by any third party for that matter, that pays down a debt of the debtor. That is because these payments, which would decrease the sum of the creditors' claims on the debtor, would have no effect on the estate of the debtor.

*Id.* at 841 (citation omitted). The Eighth Circuit then went on to find that there was no basis for disregarding the corporate form of the non-debtor entity making the payment and, therefore, that the payment was not recoverable by the trustee.

The transfer of funds from the ISI bank account to Heritage Bank was not a transfer of "an interest of the debtor in property." Since it was not a transfer of an interest of Debtor in property, the transfer is not recoverable under 11 U.S.C. § 547(b), and Plaintiffs' amended complaint (Fil. #15) should be dismissed as to Heritage Bank.

Separate judgment to be filed.

DATED: April 11, 2007.

BY THE COURT:

 /s/ Thomas L. Saladino
United States Bankruptcy Judge

Notice given by the Court to:
 Marion Pruss
 *Kent E. Rauert
 U.S. Trustee

Movant(*) is responsible for giving notice to other parties if required by rule or statute.